IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | DOCKET NO. 7:14-CR-48 (HL) |
| VS. | : | |
| | : | |
| JOSE ALFREDO MARTINEZ | : | |
| | : | |
| _____ | : | |

FILED
OCT 15 2015
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and Jose Alfredo Martinez a/k/a "Joe," hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the government's evidence.

(2)

The Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. The Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the government would have the

burden of proving Defendant's guilt beyond a reasonable doubt. The Defendant understands that Defendant would be entitled to the services of a lawyer at all stages of such a trial. The Defendant understands that Defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The Defendant understands that Defendant would have the right to testify in Defendant's own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's lawyer. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof

2



beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A) The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Indictment which charges Defendant with Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B).

(B) That defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to a maximum sentence of forty (40) years, with a mandatory minimum term of imprisonment of five (5) years, a maximum fine of $5,000,000.00, or both, and a term of supervised release of four (4) years on Count One. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

3

(C)     The Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that Defendant may have received from Defendant's counsel, the government, or the Probation Office.  The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the government, Defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D) The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed.  The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein.  The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

4

(E) Defendant understands and has discussed with Defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G) Defendant understands, and has fully discussed with Defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that Defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H) The Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the Defendant's waiver includes any collateral attack on the District Court's sentence. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the Defendant shall



retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

The Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of the Defendant's sentence, then the Defendant shall have the right to cross-appeal from the sentence.

(l)   The Defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

The Defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. § 3600 in an attempt to prove Defendant's innocence. The Defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with Defendant's counsel, and knowingly and voluntarily waives the right to have such

6

DNA testing performed on the biological evidence in this case. Defendant fully understands that because Defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

(J)   Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present indictment as well as any and all criminal violations about which the Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The Defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the Defendant to be truthful and to testify truthfully whenever called upon.

The United States of America and Defendant Jose Alfredo Martinez hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the indictment, would: (a) not

7

*J.M*

*Rw*

relieve the Defendant of Defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal

charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant.

(B) That he further agrees, if the Defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to Defendant's cooperation, to make the extent of the Defendant's cooperation known to the sentencing court. If the Defendant is not completely truthful and candid in his cooperation with the Government, the Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, the Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the

Government.  Any good faith efforts on the part of the Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion.  In addition, should the Defendant fail to cooperate truthfully and completely with the Government, or if the Defendant engages in any additional criminal conduct, the Defendant shall not be entitled to consideration pursuant to this paragraph.

(C)  Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the Defendant in connection with Defendant's cooperation and as a result of the Defendant's plea agreement to cooperate will not be used in determining the advisory guideline range.  Further, the government agrees not to bring additional charges against the Defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in Title 18, United States Code, Section 924(e)(2)(B)(i), based on any information provided by the Defendant in connection with the Defendant's cooperation, which information was not known to the government prior to said cooperation.  This does not restrict the government's use of information previously known or independently obtained for such purposes.

10



(D) If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive a downward adjustment in the advisory guideline range. But the decision whether the Defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

(A) **OVERVIEW OF THE CARTER/MARTINEZ DRUG TRAFFICKING CONSPIRACY**

From January 1, 2013, through October 28, 2014, Defendant conspired with members of his family, the Carter family, and others to distribute not less than fifteen (15) kilograms but not more than fifty (50) kilograms of cocaine in the Middle District of Georgia and elsewhere. The Defendant and Andrew Carter were partners in the drug trafficking organization. They employed various members of their respective family members to facilitate the distribution of cocaine. Juan Pablo Cuevas a/k/a "Fatman" and "Fatboy" was a significant source of supply for the Carter/Martinez drug trafficking organization. Andrew

Carter's brother, Maurice Todd Carter ("Todd Carter") was a major distributor of cocaine for the organization. Defendant and Andrew Carter utilized their respective father-in-laws, James Waters and Juan Sanchez Hidalgo, to transport payment for the cocaine to the Atlanta, Georgia area and bring cocaine back to the Tifton, Georgia area. Chris Waters, James Waters' brother, was also employed to transport cocaine for the organization. Jessica Tellez, Jose Martinez' wife, and Lataris Waters, Andrew Carter's live-in-girlfriend, assisted Defendant and Andrew Carter with the operation of the organization by managing drug proceeds and payments and coordinating drug deliveries. Andrew Carter's daughter, Diamond Carter, and sister, Kayla Carter, were also employed by the drug trafficking organization to deliver cocaine and cocaine base to customers throughout the Middle District of Georgia. Additionally, Andrew Carter's mother, Sarah Carter, assisted the organization by maintaining her residence at 1569 Georgia Avenue, Omega, Tift County, Georgia, for the purposes of the Carter/Martinez drug trafficking organization by manufacturing cocaine base, distributing cocaine base, and coordinating the transfer of kilogram quantities exchanges of cocaine and U.S. currency made by Jose Martinez. Andrew Carter and Lataris Waters' residences located at 186 Crossland Lenox Road, Omega, Colquitt County, Georgia and 6147 Futch Road, Hahira, Cook County, Georgia



were also utilized for the distribution of cocaine, the manufacture of cocaine base, and the operation of the drug trafficking organization.

## (B) INVESTIGATION LEADING TO TITLE III INTERCEPTION

The investigation of the Carter/Martinez drug trafficking organization began in December 2013 following Todd Carter's drug-related arrest and incarceration in the Tift County Jail. Recorded jail telephone calls between Andrew Carter and Todd Carter revealed the brothers, along with Defendant and other members of the conspiracy, were acquiring kilogram quantities of cocaine. Bulk cocaine would then be stored at Todd Carter's residence located at 1211 C.S. Powell Road, Omega, Georgia and Sarah Carter's residence. This activity was consistent with surveillance later conducted by agents and captured by pole cameras.

## (C) TITLE III INTERCEPTION

On August 29, 2014, a court-ordered wire intercept of Andrew Carter was initiated on telephones utilized by him and Lataris Waters to conduct illegal drug trafficking activities for the Carter/Martinez drug trafficking organization. Between August 29, 2014 and September 28, 2014, intercepted wire communications between Defendant and other members of the conspiracy revealed that Defendant and Andrew Carter acquired between ten to fifteen kilograms of cocaine. In an intercepted communication between Defendant and Andrew

Carter on August 31, 2014, Defendant stated to Andrew Carter, "I can tell him we can do, ball figure from 10 to 15 maybe more." In an intercepted communication on September 3, 2014, Defendant stated to Andrew Carter, "Yea. We gone get 10." Andrew Carter replied, "So we will have 10 to make it thru the weekend." In another intercepted communication on September 10, 2014, Defendant and Andrew Carter coordinated the pickup of ten kilograms of cocaine by James Waters who was then followed back to the Tifton, Georgia area by Juan Sanchez Hidalgo. This activity was confirmed by agent surveillance.

Numerous other intercepted communications among Defendant and other members of the conspiracy discussed the further acquisition of cocaine, the funding for cocaine acquisition, the quality of cocaine acquired, the manufacture of cocaine base, the distribution of cocaine and cocaine base, and the roles of members within the Carter/Martinez drug trafficking organization.

## (D) TAKE-DOWN OF CARTER/MARTINEZ DRUG TRAFFICKING ORGANIZATION

Prior to September 25, 2014, agents intercepted a number of phone calls between Andrew Carter, Jose Martinez and others discussing the collection of drug proceeds for the purpose of pooling the money and purchasing a large amount of cocaine from co-defendant Juan Pablo Cuevas a/k/a "Fatboy" and "Fatman" in Atlanta, Georgia. The surveillance team observed a meeting

between Jose Martinez, the Defendant and Juan Sanchez Hidalgo at the Flash Food located in Tifton, Georgia. During that meeting, the agents saw the Jessica Tellez hand her father, Juan Sanchez Hidalgo a heavy, black duffel bag, which agents believed contained the cash collected to purchase multi-kilograms of cocaine from co-defendant Juan Pablo Cuevas a/k/a "Fatboy" and "Fatman." Juan Sanchez Hidalgo placed the duffel bag in his minivan and departed while being followed by the Defendant and Jose Martinez in a 2008 Ford F-250 Super Duty Truck, VIN: 1FTSW21R88EC08416. This vehicle had been observed by agents numerous times prior during the investigation. Both vehicles were stopped near Cordele, Georgia based on valid probable cause. A search of Juan Sanchez Hidalgo's minivan revealed approximately $225,978.00 inside a duffel bag; the same duffel bag the Defendant [Jessica Tellez JB] handed her father earlier at the gas station (Flash Foods) in Tifton, Georgia. In addition to the money, agents located a small amount of cocaine inside Jessica Tellez and Jose Martinez' vehicle. This cocaine was sent to the Drug Enforcement Administration Southeast Regional Laboratory and tested positive for cocaine with a net weight of .52 grams. In a Post-<u>Miranda</u> statement, Jose Martinez informed law enforcement the organization was paying approximately $36,500.00 per kilogram of cocaine.

16

For purposes of relevant conduct pursuant to U.S.S.G. §1B1.3, the Government and Defendant stipulate and agree the quantity of cocaine attributable to Defendant is at least 15 kilograms but less than 50 kilograms.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this _15th_ day of _October_, 2015.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY: _____
AUSA JULIA C. BOWEN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NUMBER 046709

I, Jose Alfredo Martinez, have read this agreement and had this agreement read to me by my attorney, Rob Walker. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
JOSE ALFREDO MARTINEZ
DEFENDANT

I, Rob Walker, attorney for Defendant, Jose Alfredo Martinez, have explained the Indictment and the government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
ROB WALKER
ATTORNEY FOR DEFENDANT